IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF NEBRASKA

| | | |
|---|---|---|
| ERIN R. BAKER, | ) | Case No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| CORNERSTONE BANK, | ) | COMPLAINT AND JURY DEMAND |
| | ) | |
| Defendant. | ) | |

COMES NOW the Plaintiff, by and through her attorney, and for her cause of action against the Defendant hereby states as follows:

**PARTIES-VENUE-JURISDICTION**

1.    Plaintiff Erin R. Baker, is a resident of Silver Creek, Polk County, Nebraska.

2.    Plaintiff was an "eligible employee" within the meaning of the Family Medical Leave Act (FMLA), and the Americans with Disabilities Act, et seq. at all times relevant herein.

3.    Defendant Cornerstone Bank, is a Nebraska corporation authorized to conduct business in Nebraska, which operates a bank in York, Nebraska.

4.    Defendant is an "employer" within the definition of that term in the Americans with Disabilities Act (ADA) and the Family Medical Leave Act (FMLA).

5.    This Court has original jurisdiction over the claims arising under Federal law and concurrent jurisdiction over any state law claims.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1331, 29 U.S.C. §2601 et seq., ERISA 29 U.S.C. §1001 et seq., and the Court's pendent claim jurisdiction under 28 U.S.C. Section 1367(a).

6.    Venue is appropriate in this District under 28 U.S.C. §§1391(b) and (c).

7.    On or about March 5, 2021, less than 90 days prior to the filing of this Complaint, Plaintiff received a Notice of Right-to-Sue letter from the Equal Employment Opportunity

Commission with respect to her charge of discrimination.

8.      On or about March 18, 2021, less than 90 days prior to the filing of this Complaint, Plaintiff received a cause of determination from the Nebraska Equal Opportunity Commission with respect to the charge of discrimination she had filed.

## FACTUAL BACKGROUND

9.      Plaintiff began working for Cornerstone Bank on October 31, 2016 as an Audit Specialist.  She was a plan participant in the health care benefits plan and the retirement benefits plan offered by Defendant.

10.     Plaintiff has disabilities which have been diagnosed as: psoriatic arthritis, osteoarthritis, ankylosis spondylitis, rheumatoid arthritis, degenerative disc disease and fibromyalgia. Defendant also perceived her to be disabled.

11.     Plaintiff received shots for these disabilities which frequently caused her to become nauseous, fatigued and have blurred vision.

12.     As a result, Plaintiff occasionally requested leave times to recover from these side-effects.

13.     Plaintiff was able to perform her essential job duties successfully during her employment.

14.     When Plaintiff requested some intermittent leave time during the course of her employment, she initially received some of the leave requested.

15.     On or about January 20, 2019, Plaintiff met with her supervisor, Tami Paysen, allegedly to review an auditing project that Plaintiff was performing.  Paysen told the Plaintiff that her performance was poor due to "improper wording".  Plaintiff informed Paysen she was on new

medication, and it could take a brief time to adjust.

16.     On or about March 5, 2019, Plaintiff met with the head of Human Resources, Lynn Vodvarcka, and Ms. Paysen in order to request FMLA leave and/or a short-term disability leave due to medical treatment that was needed.  Plaintiff's request was denied by Ms. Paysen.

17.     Plaintiff was then told by Ms. Paysen that "it doesn't matter if Human Resources tells you that you need to take the leave, your job will not be protected.  I can't help you unless you listen to me."

18.     Plaintiff took some intermittent leave to go to medical appointments in Omaha and Lincoln.  This further angered Paysen.

19.     On April 22, 2019, Plaintiff received a  disciplinary action for using a different font on her computer.  Other similarly-situated employees have never had their grammar, style,  or font type reviewed and/or result in a disciplinary action.  Paysen also continued to scrutinize and micro manage Plaintiff while other employees were not treated in this manner.

20.     Plaintiff was denied time off for her medical appointments and denied FMLA leave, while Taylor Kahland, with no known disability, and Hannah Sikes, with no known disability, were allowed to take leave time when requested. .

21.     On or about May 1, 2019, Plaintiff called Lynn Vodvarcka, Human Resources Director, to complain about the discriminatory treatment she received from Tami Paysen.  No action was taken.  Vodvarcka merely said Plaintiff was lucky to have Paysen as her supervisor.

22.     On or about June 1, 2019, while Paysen was on vacation, Taylor Kahland, Hannah Sikes, Austin Scott, Troy Flynt, and Randy Sherer told Plaintiff that her monitor had been intentionally modified so that she could not see documents properly.  Those employees told her that

3

Paysen had instructed them not to email and not to talk to Plaintiff because she had "brain issues." She also told them to talk to her (Paysen) first before interacting with the Plaintiff.

23.     On or about June 21, 2019, Plaintiff met with Vodvarcka and Paysen and received disciplinary action because they said "her attention to detail had worsened."  Plaintiff told them it could be a side effect from her medications and requested to be transferred to the teller department, receive FMLA, or take a short-term disability leave.  She was denied the transfer because Paysen remarked that "her brain would not be able to handle working even as a teller."

24.     On or about June 25, 2019, Plaintiff's doctor told her she needed to at least temporarily reduce her hours to part-time because of the medical treatment she would be receiving.

25.     Plaintiff informed Vodvarcka and Paysen about her doctor's recommendation.  They told her because of her "brain issues", she would not be able to work as a teller, nor did they discuss the requested reduction in hours.

26.     Plaintiff denies that she has any neurological impairment that would prevent her from working.

27.     Plaintiff was eligible for FMLA leave, and requested FMLA leave on the morning of June 25th, based upon her doctor's recommendation.

28.     Plaintiff was terminated that afternoon after she requested her FMLA leave.

29.     Plaintiff is aware that a Jenny Lassek, with no disability, was allowed to transfer after a year of employment, and that Tandi Rasmussen who has no known disability, changed departments four times during her short duration of her employment.

30.     The accommodations Plaintiff requested were not cost-prohibitive to the Defendant.

4

31.     At all times relevant herein, Plaintiff's work performance was acceptable.  Plaintiff was earning approximately $24.00 per hour at the time of termination, plus health insurance and retirement benefits.

32.     Plaintiff's job was not eliminated due to any budget reductions, nor any pre-announced decision relating to job consolidations.

33.     As the result of Defendant's wrongful conduct, Plaintiff has suffered lost wages, compensatory damages, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and has also incurred attorneys fees and other costs that are continuing.

## COUNT I

### DISABILITY DISCRIMINATION

#### 42 U.S.C. §§ et seq. ("ADA")

34.     Plaintiff hereby incorporates paragraphs 1 through 33 as if fully set forth herein and states:

35.     Defendant is and was at all times material an "employer" within the meaning of under 42 U.S.C. §12111.

36.     Plaintiff is and was disabled within the meaning of the ADA, as amended.

37.     Plaintiff has disabilities that substantially limit major life activities, including but not limited to, driving, sleeping, engaging in some physical activities, interference with liver function, blurred vision, Achilles tendonitis, bone spurs, as well as neck pain and loss of finger dexterity, which affect mobility.

38.     At all times relevant, Plaintiff suffered from an impairment that substantially limited one or more of her major life activities and major bodily functions, and/or was regarded as being

5

disabled by Defendant.

39.     At all times relevant, Plaintiff was able to perform the essential functions of her job, with or without reasonable accommodation.

40.     Defendant discriminated against Plaintiff because of her disability and/or perceived disability and altered a term, condition and/or privilege of her employment, including but not limited to, harassing Plaintiff about her disability and termination of her employment.

41.     Defendant failed to accommodate Plaintiff's disability in violation of the ADA.

42.     Defendant failed to engage in good faith in an interactive process with Plaintiff to assist her in accommodating her disability in violation of the ADA.

43.     Plaintiff's disability and/or perceived disability was a motivating factor in such discrimination, failure to accommodate and failure to engage in the interactive process.

44.     The unlawful employment practices complained of above were malicious or recklessly indifferent to Plaintiff's rights as protected by Federal law, and by its conduct Defendant is subject to punitive damages.

45.     As a result of Defendant's acts and omissions, Plaintiff has in the past, and will in the future, suffer injuries and damages, including but not limited to, mental and emotional distress, humiliation, fear, embarrassment, lost enjoyment of life, lost wages and benefits, front pay and other emoluments of employment.

## COUNT I1

## DISABILITY DISCRIMINATION

### Neb. Rev. Stat. §48-1104 ("NEFEPA")

46.     Plaintiff hereby incorporates paragraphs 1 through 45 as if fully set forth herein and states:

47.     Defendant is and was at all times material an "employer" within the meaning of under Neb. Rev. Stat. §48-1102.

48.     Plaintiff is and was disabled within the meaning of the NEFEPA, and was regarded as being disabled by Defendant.

49.     Plaintiff was qualified to perform the essential functions of the job, with or without accommodation.

50.     At all times relevant, Plaintiff suffered from an impairment that substantially limited one or more of her major life activities and major bodily functions.

51.     Defendant discriminated against Plaintiff because of her disability and altered a term, condition and/or privilege of her employment, including but not limited to, harassing Plaintiff about her disability and termination of her employment.

52.     Defendant failed to accommodate Plaintiff's disability in violation of the NEFEPA.

53.     Defendant failed to engage in good faith in an interactive process with Plaintiff to assist her in accommodating her disability in violation of the NEFEPA.

54.     Plaintiff's disability was a motivating factor in such discrimination, failure to accommodate and failure to engage in the interactive process.

7

55.     As a result of Defendant's acts and omissions, Plaintiff has in the past, and will in the future, suffer injuries and damages, including but not limited to, mental health and emotional distress, humiliation, fear, embarrassment, lost enjoyment of life, lost wages and benefits, front pay and other emoluments of employment.

## COUNTS III AND IV

### RETALIATION

**42 U.S.C. §12203 and Neb. Rev. Stat. §48-1114**

56.     Plaintiff hereby incorporates paragraphs 1 through 55 as if fully set forth herein and states:

57.     During her employment, Plaintiff engaged in protected activity, including but not limited to, exercising her rights under the ADA and NEFEPA, and by requesting a disability accommodation.

58.     Defendant took adverse employment action against Plaintiff, including but not limited to, subjecting her to harassment and terminating her employment.

59.     There is a causal connection between Plaintiff's participation in protected activity and Defendant's adverse against her.

60.     As a result of Defendant's retaliation, Plaintiff has in the past, and will in the future suffer, injuries and damages, including but not limited to, mental and emotional distress, humiliation, fear, embarrassment, lost enjoyment of life, lost wages and benefits, front pay and other emoluments of employment.

**COUNT V.**

61.     Plaintiff incorporates paragraphs 1 through 60 as if fully set forth herein and states:

62.     The FMLA provides employees with the right to take medical leave and to be reinstated to the same or an equivalent position after taking protected leave.

63.     Plaintiff sought FMLA leave for a medical condition covered by the Act, and had leave time available as an eligible employee.

64.     The Defendant violated the FMLA by refusing to allow Plaintiff to take medical leave, refusing to reinstate Plaintiff to her prior position or to an equivalent position with substantially similar work and compensation upon Plaintiff's return to work, and by terminating Plaintiff in retaliation for requesting FMLA leave.

65.     Defendant interfered with, restrained, and/or denied Plaintiff's exercise of her rights under the FMLA by refusing her attempt to be reinstated to her full time position or a reasonably equivalent full time position.

66.     Plaintiff was terminated in violation of the Family Medical Leave Act for seeking her benefits under the Act, in violation of 29 U.S.C. §2615.

**COUNT VI**

**ERISA RETALIATION**

67.     Plaintiff incorporates paragraphs 1 through 66 as if fully set forth herein and states:

68.     Plaintiff was a participant in a health and welfare benefit plan as that term is defined in the ERISA (29 U.S.C. §1140), and was an employee in good standing who had accrued health

9

insurance coverage.

69.     The Defendant was a plan sponsor and/or a plan administrator as that term is defined in the Act.

70.     Defendant was well aware that Plaintiff required continuing medical coverage and treatment that would be covered by its health insurance policy.

71.     Plaintiff had informed her supervisor in early May, 2019 that she had scheduled vacation time for September, 2019 in order to go to the Mayo Clinic in Rochester, Minnesota for specialized treatment and diagnosis of her disabilities.

72.     Defendant intentionally terminated Plaintiff on June 25, 2019 in order to avoid the further health insurance payments it would have to make under the plan to cover Plaintiff's ongoing medical treatment, in violation of ERISA, §510.

73.     Plaintiff has suffered out-of-pocket medical expenses in excess of $40,000 that would have been covered by the Defendant's plan had she not been terminated.

### **PRAYER FOR RELIEF**

Based upon the foregoing matters, Plaintiff prays for relief as follows:

A.     All back pay as allowed by law;

B.     Front pay for three years;

C.     All lost insurance coverage and job benefits under any health and welfare benefit or pension plan;

D.     Compensatory damages in the maximum amount allowed by law.

E.     Liquidated damages in the amount of the reward requested above, pursuant to 29 U.S.C. §2617 (a) (1) (A) (iii).

10

F.      Punitive damages as allowed by law

G.      All costs and attorneys fees;

H.      Prejudgment interest as provided by law;

I.      All other relief the Court deems just and proper.


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial in Lincoln, Nebraska on all issues, with the

exception of the ERISA claim tried to the Court.


ERIN R. BAKER, Plaintiff

BY:     /s/ James C. Zalewski
James C. Zalewski, #16090
OLSON ZALEWSKI WYNNER LLP
575 Fallbrook Blvd., Suite 100
Lincoln, NE 68521
Phone: 402/438-2500
Email: jzalewski@ozwlaw.com
ATTORNEYS FOR PLAINTIFF

11